JAMES E. HART, Bar No. 194168
jhart@littler.com
LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA 92614
Telephone: 949.705.3000
Facsimile: 949.724.1201

PENNY CHEN, Bar No. 280706
pchen@littler.com
NETTA ROTSTEIN, Bar No. 318221
nrotstein@littler.com
LITTLER MENDELSON, P.C.
633 West 5th Street, 63rd Floor
Los Angeles, CA 90071
Telephone: 213.443.4300
Facsimile: 213.443.4299

Attorneys for Defendant
BURLINGTON COAT FACTORY WAREHOUSE
COROPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA GONZALEZ and AUDRIANA GONZALEZ on behalf of themselves, all others similarly situated and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BURLINGTON COAT FACTORY WAREHOUSE CORPORATION and DOES 1 100,<br><br>Defendants. | Case No.   5:18-cv-00666<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332(A), 1441(B), AND 1446]**<br><br>Complaint Filed February 27, 2018 (San Bernardino County Superior Court) |

1     **TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO**

2    **PLAINTIFFS AMANDA GONZALEZ AND AUDRIANA GONZALEZ AND**

3    **THEIR ATTORNEYS OF RECORD:**

4           PLEASE TAKE NOTICE that Defendant Burlington Coat Factory

5    Warehouse Corporation ("Defendant") removes the above-captioned action from the

6    Superior Court of the State of California, County of San Bernardino to the United

7    States District Court, Central District of California, Eastern Division. This removal is

8    based on 28 U.S.C. sections 1332(d), 1441(a), and 1446. Defendant makes the

9    following allegations in support of its Notice of Removal:

10   **I.    STATEMENT OF JURISDICTION**

11           1.    This Court has original jurisdiction over this action pursuant to the

12   Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district

13   courts with original jurisdiction of any civil action: (a) that is a class action with a

14   putative class of more than a hundred members; (b) in which any member of a class of

15   plaintiffs is a citizen of a state different from any defendant; and (c) in which the

16   matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

17   and costs. *See* 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in

18   accordance with United States Code, title 28, section 1446. As set forth below, this

19   case meets all of CAFA's requirements for removal and is timely and properly

20   removed by the filing of this Notice.

21   **II.   VENUE**

22           2.    Venue lies in the Central District of California pursuant to 28

23   U.S.C. §§ 84(c), 1441(a), and 1446(a). Plaintiff originally brought this action in the

24   Superior Court of the State of California, County of San Bernardino. The appropriate

25   assignment of this action is to the Eastern Division of this Court. *See* 28 U.S.C. §§

26   84(c)(1), 1391(a), 1441(a).

27

28

### III.   PLEADINGS, PROCESS, AND ORDERS

3.     On February 27, 2018 Plaintiffs Amanda Gonzalez and Audriana Gonzalez ("Plaintiffs") filed a Class Action Complaint against Defendant and various Doe defendants in San Bernardino County Superior Court, titled: *AMANDA GONZALEZ and AUDRIANA GONZALEZ on behalf of themselves, all others similarly situated, and on behalf of the general public, Plaintiffs, vs. BURLINGTON COAT FACTORY WAREHOUSE* CORPORATION; and DOES 1-100, Defendants, Case No. CIV DS1804785 (hereinafter, the "Complaint"). The Complaint asserts the following causes of action: (1) Failure to Pay All Straight Time Wages; (2) Failure to Pay All Overtime Wages; (3) Failure to Provide Meal Periods (Lab. Code §§ 226.7, 512, IWC Wage Order No. 9-2001(11); Cal. Code Regs., tit. 8 § 11090); (4) Failure to Authorize and Permit Rest Periods (Lab. Code § 226.7, IWC Wage Order No. 9-2001(12); Cal. Code Regs., tit. 8 § 11090); (5) Failure to Authorize and Permit Recovery Periods (Lab. Code § 226.7; Cal. Code Regs., tit. 8 § 3395); (6) Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions (Lab. Code §§ 226, 1174, 1175); (7) Failure to Pay All Wages Due at the Time of Termination of Employment (Lab. Code §§ 201-203); (8) Violation of Unfair Competition Law (Bus. & Prof. Code § 17200, et seq.); (9) Failure to Produce Personnel Records (Lab. Code § 1198.5); and (10) Failure to Produce Wage Records (Lab. Code § 226(f)).

4.     On March 1, 2018, Defendant was served the Complaint, along with copies of the Summons, Guidelines for All Complex Civil Litigation, Alternative Dispute Resolution Information Package, and Notice of Case Assignment, and attachments by Plaintiffs, through C T Corporation System. Attached hereto as **Exhibit "A"** is a true and correct copy of the Summons and Complaint filed in San Bernardino County Superior Court.

5.     Attached hereto as **Exhibit "B"** is a true and correct copy of the Proof of Service of Summons.

6.     Attached hereto as **Exhibit "C"** are true and correct copies of the Guidelines for All Complex Civil Litigation, Alternative Dispute Resolution Information Package, and Notice of Case Assignment, and attachments served by Plaintiffs through C T Corporation System.

7.     On March 29, 2018, Defendant filed an answer in the San Bernardino County Superior Court. Attached hereto as **Exhibit "D"** is a true and correct copy of Defendant's Answer.

8.     Pursuant to 28 U.S.C. § 1446(d), the attached Exhibits A–D constitute all process, pleadings and orders served on Defendant or filed or received by Defendant in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in San Bernardino County Superior Court or served by any party. To Defendant's knowledge, no proceedings related hereto have been heard in San Bernardino County Superior Court.

**IV.     TIMELINESS OF REMOVAL**

9.     An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the defendant within 30 days of defendant receiving the initial pleading. *See* 28 U.S.C. § 1446(b); *Murphy Bros, Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Removal of this action is timely because Notice has been filed within 30 days from March 1, 2018, when Defendant was served with the Complaint and first became aware that the action was removable. 28 U.S.C. § 1446(b). Because Plaintiffs personally served the Summons and Complaint upon Defendant's agent for service of process on March 1, 2018, the thirty-day period for removal is Saturday, March 31, 2018.

10.     Pursuant to Fed. R. Civ. P. 6(a)(1)(C), when the last day of the period is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See* Fed. R. Civ. P.

6(a)(1)(A)(5) (requiring deadlines "count every day, including intermediate Saturdays, Sundays, and legal holidays … but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"). Further, "next day" is "determined by continuing to count forward when the period is measured after an event and backward when measured before an event." *See id*. Therefore the period is extended to Monday, April 2, 2018, and this Notice of Removal is timely-filed. *See Fleming v. United Teacher Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 660-661 (D.W. Va. 2003) (removal filed on 31 days timely when final day was a holiday); *Johnson v. Harper*, 66 F.R.D. 103, 105 (E.D. Tenn. 1975) (same); *see also Agavni Pogosyan v. U.S. Bank Trust National Association et a*l., 2015 WL 12696188 *2 (C.D. Cal. 2015) (same); *Williams v. Leonard*, 2003 WL 163183 *1 (N.D. Cal. 2003) (same). As referenced above, this Notice also contains all process, pleadings and orders that were served on Defendant, and the Answer served by Defendant on April 2, 2018. *See* Exhibits A-D.

## V.    NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

11.    Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, the undersigned is providing written notice of such filing to Plaintiffs' counsel of record.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Bernardino.

## VI.    CAFA JURISDICTION

12.    The CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice.

**A.     The Proposed Class Contains At Least 100 Members.**

13.     28 U.S.C. § 1332(d)(5)(B) sets forth that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." This requirement is easily met in the case at bar.

14.     Plaintiffs seek to represent a class consisting of "All persons who are employed or have been employed by Defendant in the State of California as hourly, Non-Exempt workers, receiving associates, retail sales associates, store loss prevention associates, warehouse workers, industrial workers, shippers, stockers, and/or other similar job designations and titles who are presently or formerly employed by BURLINGTON COAT FACTORY WAREHOUSE CORPORATION and/or DOES and/or their subsidiaries or affiliated companies and/or predecessors within the State of California during the period of the relevant statute of limitations." Complaint, ¶52. Plaintiffs allege that the class is over one hundred employees. Complaint, ¶55.  While Defendant disputes that Plaintiffs and all of these individuals are or ever were employed by Defendant or any or its subsidiaries or affiliated companies and/or predecessors, they are included in the putative class for purposes of removal based on Plaintiff's allegations.

15.     Plaintiffs worked for a temporary service provider at a warehouse run by Burlington Merchandising Corporation, a wholly-owned subsidiary of Defendant Burlington Coat Factory Warehouse, but allege that they are employees of Defendant. Declaration of Christopher T. Schaub, (hereinafter "Schaub Decl."), ¶3. Plaintiffs were not employees of Defendant or of Burlington Merchandising Corporation; rather, they were employed by a temporary services firm. Plaintiffs allege that the class consists of all persons employed by Defendant and/or DOES and/or subsidiaries or affiliated companies and/or predecessors. Complaint, ¶52. In addition, Plaintiffs allege Defendant and DOES "each and collectively, controlled the wages, hours, and working conditions of Plaintiffs and the proposed class, creating a

joint-employer relationship over Plaintiffs and the proposed class." Complaint, ¶26. While Defendant denies that it was a joint employer, such allegation is presumed for purposes of removal, and damages flowing from joint liability are properly considered as part to the amount in controversy. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). Though Defendant denies that Plaintiffs and purported class members are or were employed by Defendant, for purposes of removal, Defendant must assume (without conceding) the truth of Plaintiffs' allegations for purposes of assessing class size. Accordingly, Defendant relies only on the California non-exempt employees working for Burlington Merchandising Corporation during the relevant time period.

16.    Based on a preliminary review of Burlington Merchandising Corporation's records, Burlington Merchandising Corporation currently employs approximately 1,300 nonexempt employees in California, and employed a total of approximately 3,645 nonexempt employees in California during the putative class period of February 27, 2014 to the present. Declaration of Walter Szczesny (hereinafter "Szczesny Decl."), ¶ 6. Thus, there are well over 100 putative class members in this case according to Plaintiffs' proposed class definition.

**B.    Defendant Is Not A Governmental Entity.**

17.    Under 28 U.S.C. § 1332(d)(5)(B), the CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

18.    Defendant is a corporation, not a state, state official or other government entity exempt from the CAFA.

C.    **There Is Diversity Between At Least One Class Member And One Defendant.**

19.    CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Transport Ass'n of America*, 300 F3d 1129, 11 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiffs and Defendant are citizens of different states.

20.    Plaintiffs are citizens of the State of California. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place he resides with the intention to remain). Furthermore, allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).

21.    Here, at the time Plaintiffs commenced this action and, upon information and belief, at the time of removal, Plaintiffs resided in the State of California. Plaintiffs allege in their Complaint that "Plaintiffs AMANDA GONZALEZ AND AUDRIANO GONZALEZ are and were residents of California."

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA  92614
949.705.3000

Complaint, ¶ 30. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (residency can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile). Defendant has thus established by a preponderance of the evidence that Plaintiffs resided and were domiciled in California, and therefore are citizens of California.

22.    Conversely, neither Defendant, nor any of its subsidiaries, including Burlington Merchandising Corporation, is a citizen of California. As a corporation, Burlington Coat Factory Warehouse Corporation is deemed to be a citizen of both the state in which it was incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c). Burlington Coat Factory Warehouse Corporation was, at the time of the filing of this action, a corporation incorporated under the laws of the State of Delaware. See Schaub Decl., ¶5.

23.    Burlington Coat Factory Warehouse Corporation's principal place of business is in the State of New Jersey. To determine a corporation's principal place of business, the courts apply the "nerve center test," which deems the principal place of business to be the state "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). In practice, the principle place of business is "where the corporation maintains its headquarters." *Id.* Burlington Coat Factory Warehouse Corporation has its headquarters at 2006 N. Route 130, Burlington, NJ 08016-3020, which is where the corporation's home offices are located. Although the *Hertz* Court did not articulate a precise test by which to determine the location of a corporation's "nerve center,"

lower courts have considered the following list of non-exclusive factors in determining a corporation's "nerve center":

      a.  where the company's home offices are located;

      b.  where the directors and stockholders meet;

      c.  where the corporate officers and executives reside;

      d.  where policy decisions are made;

      e.  where general counsel resides and has its offices; and

      f.  where the administrative and financial offices are located and the records kept.

*See, e.g., Unger v. Del E. Webb Corp.*, 233 F. Supp. 713, 716 (N.D. Cal. 1964); *see also State Farm Fire & Cas. Co. v. Byrd,* 710 F. Supp. 1292, 1293 (N.D. Cal. 1989). The corporation's home offices are located in Burlington, New Jersey. This is also where the directors frequently meet and where the corporate officers and executives and general counsel have their offices. The Burlington, New Jersey offices are also where a majority of company policy decisions are made and where the administrative and financial offices are located and where those offices keep their records. See Schaub Decl., ¶¶5-6.

     24.    Therefore, Defendant Burlington Coat Factory Warehouse Corporation is a citizen of New Jersey and Delaware.

     25.    The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

     26.    Accordingly, the named Plaintiffs are both citizen of a state different from Defendant, and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA 92614
949.705.3000

10.

**D.**     **The Amount In Controversy Exceeds $5,000,000.**[1]

27.     This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

28.     The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court, in *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554, 2014 WL 7010692 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.* at 554. Otherwise "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.*

29.     Defendant denies the validity and merit of the entirety of Plaintiffs' alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiffs or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the aggregated claims of the putative class establishes, by a preponderance of evidence, that the amount in controversy exceeds the jurisdiction minimum of $5,000,000. For purposes of determining whether the amount in controversy has been satisfied, the Court must presume that the Plaintiff will prevail on his claims. *Kenneth Rothschild*

---

[1] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiffs or the putative class are entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiffs' alleged damages in this case.

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA  92614
949.705.3000

*Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability."). The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Investments, Inc.* 775 F.3d 1193, 1198 n. 1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy).

30.    Here, Plaintiffs do not allege the amount in controversy in the Complaint. In the Prayer for Relief, Plaintiffs seek compensatory damages, statutory penalties, attorneys' fees, equitable, injunctive, and declaratory relief, among other relief. Complaint, Prayer for Relief. When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. Defendant's notice of removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Company LLC*, 135 S. Ct. at 554.

31.    Plaintiffs' Complaint repeatedly alleges that Defendant had "a continuous and wide-spread policy," and a "consistent policy and/or practice" of failing to pay putative class members for all hours worked, requiring members of the putative class to work through meal periods, failing to provide rest and recovery breaks, and failing to provide itemized wage statements. Complaint, ¶¶5-9, 11-15. Plaintiffs allege this "consistent policy" was present "[f]or at least four (4) years prior to the filing of this action and through to the present …" Complaint, ¶¶5-16. Plaintiffs further allege that Defendant's failure to provide accurate wage statements was willful. Complaint, ¶14. As such, Plaintiffs' Complaint alleges that as a standard policy, employees have been and continue to be denied meal period, rest periods, and

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA 92614
949.705.3000

12.

recovery periods on each day worked, and therefore are owed one hour of premium wages under Labor Code section 226.7. Complaint, ¶¶102, 110, 114, 118,126; s*ee, e.g., Mejia v. DHL Express (USA), Inc.,* 2015 U.S. Dist. LEXIS 67212, *10-11 (C.D. Cal. May 21, 2015) (100% violation rate may be based on allegations of uniformly adopted and maintained policies).

32.     Plaintiffs allege causes of action for violations of the Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.* Complaint, ¶¶147-156. Alleging a UCL violation may extend the statute of limitations for Plaintiffs' and the putative class's meal period, rest period, overtime and minimum wage claims from three to four years from the filing of the Complaint, which in this case, extends the statute of limitations to February 27, 2014. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

33.     Though Defendant denies that Plaintiffs and purported class members are or were employed by Defendant, for purposes of removal, Defendant must assume (without conceding) the truth of Plaintiffs' allegations for purposes of assessing amount in controversy. Accordingly, Defendant relies only on the California non-exempt employees working for Burlington Merchandising Corporation during the relevant time period.[2] Based on a preliminary review of its records, Burlington Merchandising Corporation currently employs approximately 1,300 nonexempt employees in California, and employed a total of approximately 3,645 nonexempt employees in California during the putative class period of February 27, 2014. Szczesny Decl., ¶ 6. Additionally, since February 27, 2015, a total of approximately 2,122 former nonexempt employees separated from Burlington Merchandising Corporation. Szczesny Decl., ¶7. The hourly rates, over the entire alleged class period,

---

[2] Defendant does not have possession or readily available access to Plaintiffs' personnel records kept by the temporary service provider which employed the Plaintiffs and similarly situated purported class members.

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA  92614
949.705.3000

for the purported class members employed at Burlington Merchandising Corporation that Plaintiffs seek to represent average approximately $11.45. Szczesny Decl., ¶8. Based on the available employment records, the time period Plaintiffs have placed at issue, and the number of employees at issue, Plaintiffs have placed approximately 202,878 workweeks in controversy for non-exempt employees of Burlington Merchandising Corporation. Szczesny Decl., ¶9.

### 1. Failure to Provide Meal Periods

34. By way of their third cause of action, Plaintiffs allege that that Defendant failed to provide required duty-free meal periods of not less than 30 minutes for every five hours worked, alleging Defendant's "business model is such that Non-Exempt Employees were assigned too much work and insufficient help due to chronic understaffing to be able to take meal periods. Thus, Non-Exempt Employees are not able to take meal periods." Complaint, ¶¶103-105. Plaintiffs further allege Defendant "had a pattern and practice of assigning too much work to be completed in too short of time frames, resulting in Plaintiffs and those similarly situated no being able to take meal periods." Complaint, ¶106.

35. Plaintiffs allege Defendant does not have a policy of providing a second meal period before the end of the tenth hour of work. Complaint, ¶108.

36. Plaintiffs and the putative class are seeking to recover premium wages, interest, penalties, and attorneys' fees and costs for alleged meal period violations. Complaint, ¶110. California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a meal period was not provided. IWC Wage Order 7(11).

37. While Defendant denies the validity and merit of Plaintiffs' missed meal period claims, for purposes of removal only, based on a preliminary review of their records, Defendant calculates that based on the hourly rates of pay for

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA  92614
949.705.3000

14.

the putative class members and assuming one missed meal period every two work weeks[3], the amount in controversy for Plaintiffs' meal period claim is $1,161,476[4].

### 2. Failure to Provide Rest Periods

38.     By way of their fourth cause of action, Plaintiffs allege that Defendant's "business model was such that Non-Exempt Employees were assigned too much work with insufficient help due to chronic understaffing whereby Plaintiffs and the Class had to work through their rest periods." Complaint, ¶116. California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a rest period was not provided. IWC Wage Order 7(12).

39.     While Defendant denies the validity and merit of Plaintiffs' missed rest period claims, for purposes of removal only, based on a preliminary review of their records, Defendant calculates that based on the hourly rates of pay for the putative class members and assuming one missed rest periods every two work weeks, the amount in controversy for Plaintiffs' rest period claim is $1,161,476[5].

### 3. Wage Statement Claim

40.     Plaintiffs' Sixth Cause of Action alleges that Defendant knowingly and intentionally provided Plaintiffs and putative class members with "accurate itemized wage statements." Complaint, ¶132.

41.     Labor Code Section 226(e) provides for a statutory penalty for violations of Labor Code § 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100

---

[3] This is an extremely conservative estimate of missed meal and rest periods relative to Plaintiffs' Complaint allegation of a "continuous and widespread policy" of failure to provide meal and rest breaks, since a 100% violation rate could be assumed based on this allegation. Complaint, ¶¶ 9, 11, 12. See *Mejia v. DHL Express (USA), Inc.,* 2015 U.S. Dist. LEXIS 67212, *10-11
[4] 0.5 missed meal periods a week x $11.45 per hour x 1 hour meal period premium x 202,878 workweeks.
[5] 0.5 missed rest periods a week x $11.45 per hour x 1 hour rest period premium x 202,878 workweeks.

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA  92614
949.705.3000

per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000 per employee. Cal. Labor Code § 226(a). The statutory period for Labor Code § 226(e) penalties is one year. Cal. Code Civ. Proc. § 340. Thus, an employee will reach the maximum penalty if she is employed for 41 weeks ($50 for the first week + $100 for 40 weeks = $4,050).

42.     Defendant denies the validity and merit of Plaintiffs' wage statement claims. For purposes of removal, based on a preliminary review of their records, Defendant estimates that Burlington Merchandising Corporation had 921 non-exempt employees in California during the one year prior to the filing of the Complaint in this action who worked at least 40 workweeks, to qualify for the maximum penalty under section 226(e). Szczesny Decl., ¶10. Defendant pays its non-exempt employees weekly. Therefore, the amount in controversy for this claim is at least $3,684,000.[6]

### 4.     Waiting Time Penalties

43.     As their Seventh Cause of Action, Plaintiffs seeks waiting time penalties pursuant to Labor Code § 203. Complaint, ¶142. The statute of limitations for Plaintiff's Labor Code § 203 waiting time penalty claim is three years. *Pineda v. Bank of America, N.A.,* 50 Cal. 4th 1382, 1935 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages").

44.     Plaintiffs demand up to thirty days of pay as penalty for not paying all wages due at time of termination for the putative class. Complaint, ¶142.

45.     Defendant denies the validity and merit of Plaintiffs' waiting time penalties claims. For purposes of removal, based on a preliminary review of their

---

[6] 921 employees * $4,000 maximum penalty = $3,684,000. This does not take into account many other employees who were employed fewer than 40 hours during the statutory period.

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA  92614
949.705.3000

16.

records, Defendant estimate that 2,122 employees have separated from employment with Burlington Merchandising Corporation since February 27, 2015. Szczesny Decl., ¶7. Accordingly, although Defendant denies Plaintiffs' allegations, including any alleged damages, based on the reasonable assumption that the putative class members would receive waiting time penalties based on eight-hour days for thirty days, an estimate of the amount in controversy related solely to waiting time penalties is $5,831,256.[7]

### 5. Claim for Attorneys' Fees.

46. Plaintiffs also seek attorneys' fees and costs in their Complaint. Complaint, Prayer for Relief, ¶¶18, 20. The Court must consider attorneys' fees in determining whether the amount in controversy is met, since the California Labor Code allows recovery of such fees. It is well-settled that claims for statutory attorneys' fees are to be included in the amount in controversy. *See*, *e.g.*, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005), *cert. denied*, 127 S. Ct. 157 (2006); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In California, it is not uncommon for an attorneys' fee award to be twenty-five to thirty percent of the settlement. *See, e.g., McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class action, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (affirming award of $727,000 in attorneys' fees plus a multiplier that equate to total fees of $1,199,550 in class action involving violations of a living wage ordinance, among others). The attorneys' fees benchmark in the Ninth Circuit is 25%. *Paul,*

---

[7] 8 hours a day x 30 days x $11.45 x 2,122 employees

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA 92614
949.705.3000

17.

*Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.") (citation omitted); *Lo v. Oxnard Euro. Motors, LLC*, No. 11-CV-1009, 2012 US. Dist. LEXIS 73983, *8-9 (S.D. Cal. May 29, 2012) ("The Ninth Circuit has accepted as a benchmark for an attorneys' fees awards a twenty-five percent of the common fund recovery.").

47.    The amount in controversy for just meal period premiums, rest period premiums, wage statement penalties, and waiting time penalties is $11,838,208.[8] This subtotal far exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of 25% further increases the amount in controversy by $2,959,552 for a total amount in controversy of $14,797,760.

### 6.    Claim for Injunctive Relief.

48.    Finally, the Complaint also seeks injunctive relief to require Defendants to pay all allegedly outstanding wages due to Plaintiff and the putative class. Complaint, Prayer for Relief, ¶¶13-14. While Defendant has not yet quantified the costs of compliance with any such injunction, this would further increase the amount in controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011), *cert granted in part*, 534 U.S. 1126, 123 S.Ct. 1063, 151 L.Ed.2d 966 (2002); *cert. dismissed*, 537 U.S. 1, 123 S.Ct. 584 (2002); *see also Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (cost of complying with injunction may be aggregated for CAFA purposes).

## VII.   SUMMARY

49.    Removal of this action is therefore proper as the aggregate value of Plaintiffs' class causes of action for unpaid meal and rest periods premiums, final

---

[8] This subtotal does not take into account several other claims alleged by Plaintiffs, including unpaid wages, unpaid overtime, missed recovery periods, and failure to produce personnel and wage records. Obviously, inclusion of those claims would greatly increase the amount in controversy.

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA  92614
949.705.3000

18.

wages not timely paid, non-compliant wage statements, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5 million. See 28 U.S.C. § 1332(d)(2):

| Plaintiff's Alleged Claim | Amount in Controversy |
| --- | --- |
| Meal Period Premiums | $1,161,476 |
| Rest Period Premiums | $1,161,476 |
| Non-Compliant Wage Statements | $3,684,000 |
| Waiting Time Penalties | $5,831,256 |
| Attorneys' Fees | Approximately $2,959,552[9] |
| **Amount in Controversy** | **$14,797,760** |

50.     Accordingly, although Defendant fully deny Plaintiffs' claims of wrongdoing as alleged in their Complaint, the jurisdictional minimum is satisfied for purposes of determining amount in controversy, as it readily exceeds the $5,000,000 threshold required under CAFA.

WHEREFORE, Defendant hereby removes this action from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California.

Dated:   April 2, 2018

/s/ James E. Hart
James E. Hart
Penny Chen
Netta Rotstein
LITTLER MENDELSON, P.C.
Attorneys for Defendant
BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION

---

[9] 25% of subtotal $11,838,208.

LITTLER MENDELSON, P.C.
2050 Main Street
Suite 900
Irvine, CA  92614
949.705.3000