UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 18-666 JGB (SPx)** | Date | March 1, 2021 |
| Title | *Amanda Gonzalez, et al. v. Burlington Coat Factory Warehouse Corporation* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ & NOE PONCE | PHYLLIS A. PRESTON |
|---|---|
| Deputy Clerks | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| David Thomas Mara | Ryan Christopher Bykerk |

**Proceedings:**    Order (1) GRANTING Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 43) and Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments (Dkt. No. 44)

     Before the Court are Amanda Gonzalez and Audriana Gonzalez's ("Plaintiffs") unopposed motions for final approval of class action settlement ("MFA," Dkt. No. 43) and for attorneys' fees, costs, and representative enhancement ("Fee Motion," Dkt. No. 44). The Court held a telephonic final approval hearing on March 1, 2021. After considering the papers filed in support of the matters, as well as oral argument, the Court GRANTS the Motions.

## I.   BACKGROUND

     Plaintiffs commenced the action in California Superior Court for the County of San Bernardino on February 27, 2018 against Burlington Coat Factory Warehouse Corporation ("Defendant"). (Dkt. No. 1.) Defendant removed the action on April 2, 2018, and Plaintiffs filed a first amended complaint on October 1, 2018. ("FAC," Dkt. No. 17.) The FAC asserts the following ten causes of action: (1) failure to pay all straight time wages; (2) failure to pay all overtime wages; (3) failure to provide meal periods in violation of Cal. Lab. Code § 226.7 and IWC Wage Order No. 9; (4) failure to authorize and permit rest periods in violation of Cal. Lab. Code § 226.7 and IWC Wage Order No. 9; (5) failure to authorize and permit recovery periods in violation of Cal. Lab. Code § 226.7; (6) knowing and intentional failure to comply with itemized employee wage statement provisions in violation of Cal. Lab. Code §§ 226, 1174, 1175; (7) failure to pay all wages due at time of termination of employment in violation of Cal. Lab. Coe §§ 201-203; (8) violation of California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §

17200 et seq.; (9) failure to produce personnel records in violation of Cal. Lab. Code § 1198.5; and (10) failure to produce wage records in violation of Cal. Lab. Code § 226(f).  (FAC.)

Plaintiffs filed an unopposed motion for preliminary approval of class action settlement on July 27, 2020.  ("MPA," Dkt. No. 39.)  The Court granted the MPA on August 21, 2020.  ("MPA Order," Dkt. No. 41.)  In the MPA Order, the Court certified a Settlement Class; appointed David Mara, Jamie Serb, and Tony Roberts of the Mara Law Firm as Class Counsel; appointed Amanda Gonzalez and Audriana Gonzalez as class representatives; appointed CPT Group, Inc. as the settlement administrator; approved the requisite Class Notice forms; granted Plaintiffs leave to file a Second Amended Complaint; and authorized the mailing of Class Notice forms.  (Id. at 13-14.)  The Court set the final fairness hearing for Monday, March 1, 2021 at 9:00 a.m.  (Id. at 14.)

On August 25, 2020, Plaintiffs filed a Second Amended Complaint.  ("SAC," Dkt. No. 42.)  The SAC adds an eleventh cause of action for violation of the Labor Code Private Attorneys General Act of 2004 ("PAGA").  (SAC ¶¶ 173-76.)

Plaintiffs filed the unopposed MFA on February 1, 2021, and included in support the following documents:

- Declaration of David Mara, Esq. ("Mara Declaration," Dkt. No. 43-1);
- Declaration of Amanda Gonzalez ("Amanda Gonzalez Declaration," Dkt. No. 43-2);
- Declaration of Audriana Gonzalez ("Audriana Gonzalez Declaration," Dkt. No. 43-3); and
- Declaration of Bryan Valdez ("Valdez Declaration," Dkt. No. 43-4).

Plaintiffs also filed the Fee Motion on that same date, with the following documents in support:

- Declaration of Richard M. Pearl ("Pearl Declaration," Dkt. No. 44-2);
- Declaration of Amanda Gonzalez ("Amanda Gonzalez Declaration," Dkt. No. 44-3); and
- Declaration of Audriana Gonzalez ("Audriana Gonzalez Declaration," Dkt. No. 44-4).

On February 8, 2021, Defendant filed a notice of non-opposition ("Non-Opposition," Dkt. No. 45), along with the Declaration of Ryan C. Bykerk ("Bykerk Declaration," Dkt. No. 45).

//
//
//
//

## II.  THE SETTLEMENT AGREEMENT

The parties finalized and executed the class action settlement agreement in June 2020. ("Agreement," Dkt. No. 39-1.)  The Agreement defines the settlement class ("Class") as follows:

> All current and/or former non-exempt, nonunion, hourly employees provided as temporary workers by Lyneer Staffing Solutions who worked one or more shifts in a workweek at Burlington's distribution centers located in California at any time between February 27, 2014 and [August 21, 2020].

(Agreement ¶ 3; MFA at 3.)

### A.  Settlement Summary

Below is an overview of the financial terms of the Agreement:

- Gross settlement amount: $3,000,000
- Attorneys' fees: $750,000
- Litigation Costs: $25,826.97
- LWDA share of PAGA penalties: $225,000
- Total service award for two class representatives: $15,000
- Administration costs not to exceed: $45,000
- Estimated net settlement after deduction of payroll taxes[1]: $1,860,726.53

The $3,000,000 gross settlement amount is non-reversionary, so no amount will be returned to Defendant.  (MFA at 1.)  Any checks issued to Participating Class Members shall remain valid and negotiable for 180 days from the date of issuance.  The parties agree that the funds from any uncashed checks will be sent to a cy pres beneficiary.  (Agreement ¶¶ 11, 78, 95.)  United Way of California is the designated cy pres beneficiary.  (Id. ¶ 37.)

### B. Financial Terms

#### 1.  Participating Class Members

"Participating Class Member" is defined as any Class Member who does not opt-out of the Settlement or who opts-out but subsequently rescinds the opt-out in a timely manner. (Agreement ¶ 34.)  One-Third (1/3) of each Settlement Payment is intended to settle each Class Member's claims for alleged unpaid wages.  (Class Notice at 6.)  This wage portion will be

---

[1] Of the $1,939,173.03 left after the above deductions, one-third, or $621,328.87 is attributable to wages.  This amount is multiplied by 14.45% to arrive at the estimated employer payroll taxes of $78,446.50.  Subtracting $78,446.50 in payroll taxes from $1,939,173.03 results in the $1,860,726.53 net settlement amount.  (Mara Decl. ¶ 26.)

reduced by applicable payroll tax withholdings.  (Id.)  The Settlement Administrator will issue an IRS Form W-2 to each Participating Class Member with respect to the wage portion of his/her Settlement Payment.  (Id.; see also Agreement ¶ 61.)  Two-Thirds (2/3) of the Settlement Payment is intended to settle each Class Member's claims for interest and penalties.  (Class Notice at 6.)  This non-wage portion will not be reduced by payroll tax withholding and deductions.  (Id.)  The Settlement Administrator will issue to each Participating Class Member an IRS Form 1099 with respect to this non-wage portion of his/her Settlement Payment.  (Id. at 6-7.)  All PAGA Group Payments will be allocated entirely to penalties and reported on IRS 1099 Forms.  (Id.; see also Agreement ¶ 61.)

There are 5,776 individuals who fall within the Class definition.  (Mara Decl. ¶ 23.)

### 2. Payment and Distribution of Funds

Defendant will fund the gross settlement amount within ten days of the settlement effective date.  (Agreement ¶¶ 43, 95.)  The Settlement Administrator shall pay each Participating Class Member a pro rata portion of the Net Settlement Amount based on the number of weeks he or she worked as a Class Member.  (Id. ¶ 54.)  That pro rata portion shall be determined by dividing the total number of weeks worked as a Class Member by all members of the Class into the amount of the Net Settlement Amount to arrive at an amount per week; then, for each eligible Class Member, multiplying that amount times the number of weeks the Settlement Administrator determines that such individual worked as a Class Member.  (Id.)  Participating Class Members who are sent Settlement Payments and PAGA Group Members who are sent PAGA Group Payments shall have 180 calendar days after mailing by the Settlement Administrator to cash their checks and will be so advised of such deadline.  (Id. ¶ 78.)  They will receive reminder postcards if the checks are not redeemed or deposited within 90 days after mailing.  (Id. ¶ 78(a).)  Remaining funds go the cy pres beneficiary.  (Id. ¶ 78(b).)

### 3. PAGA Payment

The Agreement allocates $300,000 of the gross settlement to PAGA penalties ("PAGA Payment").  Seventy-five percent (75%) ($225,000) of the PAGA Payment shall be paid to the LWDA, and twenty-five percent (25%) ($75,000) of the PAGA Payment will become part of the net settlement amount distributed to PAGA Group Members.  (Agreement ¶¶ 31-32, 54(e)(iii)-(iv).)

### 4. Class Representatives

The Agreement provides for an incentive payment of $7,500 to each Plaintiff for their efforts in prosecuting the action and the stigma they now face for doing so.  (Fee Mot. at 12-13; Agreement ¶ 54(e)(ii).)  Plaintiffs also agree to a more general release than the Class Members.  (Agreement ¶¶ 79-84.)

//

### 5. Settlement Administration Costs

The Court appointed CPT Group, Inc. ("CPT") as the settlement administrator. (MPA Order at 15.) The Agreement allocates an amount not to exceed $45,000 to administer the settlement. (Agreement ¶¶ 41, 54(v).) CPT mailed notice packets to the class, and has kept track of opt-out requests and objections to the Settlement. (See Valdez Decl.)

### 6. Attorneys' Fees and Costs

Class Counsel request an award of attorneys' fees in an amount of $750,000 (25% of the Gross Settlement Amount). (Agreement ¶ 54(e)(i); Fee Mot. at 5.) Class Counsel also request a reimbursement from the Gross Settlement Amount for actual litigations costs in an amount of $25,826.97 (MFA Mot. at 12), which is less than the $50,000 authorized in the Agreement (Agreement ¶ 54(e)(i)).

## C. Injunctive Relief

The Agreement does not appear to include any injunctive relief.

## D. Release

In exchange for Burlington's promise to make the payments provided in the Agreement:

> [t]he releases agreed upon and made part of the settlement by Participating Class Members ("Settlement Class Released Claims") shall include a release of Releasees[2] . . . of the Settlement Class Released Claims. Settlement Class Released Claims are any and all wage and hour claims that accrued during or prior to the Class Period and that were or could have been asserted in the instant Action based on the allegations in any pleading in the Action, including the Second Amended Complaint, whether such claims were asserted or not, including but not limited to any and all claims for straight time, overtime, minimum wage, meal and rest breaks, recovery periods, wage statements, waiting time penalties, unfair competition, failure to produce personnel or wage records, and claims under the California Labor Code Private Attorneys General Act, Labor Code §§ 2699, et seq. ("PAGA"), as well as any and all state or federal claims that are derivative or directly related to the foregoing claims, including any claims for wages, penalties,

---

[2] "Releasees" means each and all of Burlington Coat Factory Warehouse Corporation, Lyneer Staffing Solutions (as defined above), and each of their respective predecessors, successors and assigns, their current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities, and their current and former officers, directors, shareholders, employees, agents, representatives and employee benefit programs, including the trustees, administrators, fiduciaries and insurers of such programs. (Agreement ¶ 37.)

>   premium pay, punitive damages, and interest, and/or under the common law, such as conversion and unjust enrichment, and any claims under the California Business & Professions Code. All Participating Class Members shall be bound by the release unless they formally opt-out. The PAGA Group shall bound by the release as to any PAGA claims even if they have formally opted-out of the Class.

(Agreement ¶ 85.) The release covers facts that were alleged or could have been alleged in Plaintiffs' complaint and PAGA letter, as such the release is tied to the facts contained therein. Only Plaintiffs have agreed to a general release of all claims, including a waiver under Cal. Civil Code § 1542. (Agreement ¶¶ 79-84.)

### E. Notice

On August 24, 2020, Class Counsel provided CPT with the notice package approved by the Court. (Valdez Decl. ¶ 2.) On September 30, 2020, counsel for Defendant provided CPT with a class data file containing all Class Members/PAGA Group members, including names, last known residence addresses, Social Security numbers, and dates worked during the Class Period/PAGA Period. (Id.)

The finalized list contains 5,776 Class Members/PAGA Group members. (Id. ¶ 4.) CPT conducted a National Change of Address Database ("NCOA") search for all Class Members to update their addresses. (Id.) On September 30, 2020, CPT mailed Notice Packets via U.S. first class mail to all Class Members. (Id.)

Seventy-seven Notice Packets were returned to CPT. (Id. ¶ 5.) CPT performed skip traces to locate new mailing addresses, and re-mailed seventy-six Notice Packets to new mailing addresses. (Id.) One Notice Packet was unable to be delivered because a new mailing address could not be found. (Id.)

Class Members had until December 18, 2020 to submit objections or requests for exclusion. (Class Notice at 4.) As of February 1, 2021, CPT has not received any written objections or requests for exclusion. (Valdez Decl. ¶¶ 6-7.)

## III. LEGAL STANDARD

### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. Id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  Hanlon, 150 F.3d at 1026.  "The settlement must stand or fall in its entirety."  Id.

In order to approve a class action settlement, the court must conduct a three-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act.  Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Finally, the court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2).  Id.

### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal Rules of Civil Procedure.  While the rule specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees.  "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award."  MRO Commc'ns, Inc. v. AT&T Co., 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees.  See Newberg on Class Actions § 14.1 (4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting provisions and the equitable common-fund doctrine").  Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'"  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## IV. DISCUSSION

### A. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

> The statute provides detailed requirements for the contents of such a notice. <u>Id.</u> A court is precluded from granting final approval of a class action settlement until the notice requirement is met:
>
> > An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

Defendant's Counsel filed a declaration asserting that they served all required documents to all appropriate federal and state officials on August 4, 2020. (Bykerk Decl. ¶ 3, Exs. 1-2.) As a result, the Court finds that the CAFA notice requirements have been satisfied.

### B. Rule 23(a) and (b) Requirements

In its MPA Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). (MPA Order at 3-5.) The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." <u>Adoma v. Univ. of Phoenix, Inc.</u>, 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); see also <u>Harris v. Vector Marketing</u>, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); <u>In re Apollo Group Inc. Securities Litigation</u>, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Class has not changed since it was conditionally certified. (MFA at 3.) All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### C. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its MPA Order, the Court approved the notice sent to Settlement Class Members. (MPA Order at 14.) CPT completed notice in accordance with the procedures approved by the Court. (<u>See</u> Valdez Decl.) The Court therefore finds that notice to the Settlement Class was adequate.

//
//

### D. Fair, Reasonable, and Adequate

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing by telephone on March 1, 2021.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement;
(5) the extent of discovery completed, and the stage of the proceedings;
(6) the experience and views of counsel;
(7) the presence of a governmental participant; and
(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exhaustive, and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

#### 1. Strength of Plaintiffs' Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964-65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965. In the MPA and MFA, Plaintiffs emphasized the hurdles the class would need to overcome to prevail on the merits of their case. (MPA at 20; MFA at 14-19.) As a result, the Court finds this factor weighs in favor of granting final approval.

#### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Plaintiffs describe the significant risks they would face in obtaining and maintaining certification, proving liability, and in continued litigation.  For instance, Plaintiffs would have to establish that Burlington was their employer (as well as the Class Members'), which hinges on a multi-factor <u>Borello</u> test for employment because Defendant is at most a co-employer and did not classify Class Members as independent contractors.  (MFA at 12-13 (citing <u>S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations</u>, 48 Cal. 3d 341 (1989)).)  Given uncertain and complicated application of those factors to determine Defendant's employer status, Plaintiffs argue the risks of proceeding to certification and trial are significant.  (<u>Id.</u>)  Plaintiffs also comment on the risk of continued litigation and Defendant's likely challenges to class certification.  (<u>Id.</u> at 13-17.)

The risk, expense, and complexity, including the risk of decertification, weigh in favor of final approval.  (MPA Order at 10-11; MFA at 12-18.)  Without the Settlement, the parties would be required to litigate the merits of the case—a process which the Court acknowledges is long, complex, and expensive.  Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of approval.

### 3. Amount Offered in Settlement

The gross settlement amount is $3,000,000.  (MFA at 4.)  Counsel estimates that that the maximum potential liability for core claims for unpaid wages, meal and rest periods violations, and PAGA penalties is $6,715,546.  (MPA at 27.)  The gross settlement therefore amounts to approximately 44% of the estimated maximum potential recovery.  (<u>Id.</u> at 28.)  The net settlement amount of $1,860,726.53 represents about 28% of the total exposure for the core claims.  From that net settlement amount, the average recovery is $322.15 per Class Member.  (MFA at 4-5; Mara Decl. ¶ 27.)

"Even a fractional recovery of the possible maximum recovery amount may be fair and adequate in light of the uncertainties of trial and difficulties in proving the case."  <u>Millan v. Cascade Water Servs.</u>, 310 F.R.D. 593, 611 (E.D. Cal. 2015).  Here, the recovery amount is consistent with (or exceeds) amounts routinely found to be fair and reasonable.  <u>See, e.g.</u>, <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 459 (9th Cir. 2000) (permitting settlement amount that was one-sixth of potential recovery); <u>Deaver v. Compass Bank</u>, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving a settlement that was 10.7% of the total potential liability).  In light of the difficulties Plaintiffs would likely face if they continued to litigate this case, the Court finds the amount offered here to be reasonable.

### 4. Extent of Discovery Completed, and the Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  <u>Linney</u>, 151 F.3d at 1239.  "The parties must … have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement."  <u>Acosta v. Trans Union, LLC</u>, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal quotation marks omitted).

Here, Plaintiffs note that the matter was settled after discovery that resulted in hundreds of pages of documents and hundreds of thousands of lines of data. (MFA at 19.) Plaintiffs reviewed information and data including policies and best practices, meal period and rest break policies, contracts between Burlington and Lyneer Staffing Solutions, Lyneer Staffing Solutions' time records, attendance records, and pay records, as well as personnel files. (Id.) Plaintiffs hired an expert to analyze the timekeeping and payroll data. (Mara Decl. ¶ 48.) The parties also attended two mediations. (Id. ¶¶ 49-50.)

Because the parties participated in mediation and conducted significant investigation, the Court finds each side has a clear idea of the strengths and weaknesses of its respective cases, and concludes that the extent of discovery and the stage of proceedings weigh in favor of final approval.

### 5. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Here, Class Counsel have extensive experience serving as counsel in complex class actions, including wage and hour actions. (MFA at 19-20; Mara Decl. ¶¶ 2-20.) The parties reached settlement after review of their claims and defenses, with the assistance of two mediators. (Mara Decl. ¶¶ 49-50.) Counsel recommends the settlement, asserting that it "is in the best interests of the class as fair, reasonable, and adequate." (Id. ¶ 21.) As a result, the experience and views of Class Counsel also weigh in favor of final approval.

### 6. Presence of a Government Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 7. Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable. DIRECTV, Inc., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, CPT has received no objections or opt-out requests. (MFA at 20; Valdez Decl. ¶¶ 6-7.) CPT mailed notice to all 5,776 Class Members, only one of which had an address ultimately deemed undeliverable. (Valdez Decl. ¶¶ 4-5.) Thus, a total of 5,775 Class Members, or 99.99% of the Class, were mailed Notice which was not returned as undeliverable. (Id. ¶ 5.) The deadline to opt out or object to approval of the Agreement was December 18, 2020, but no Class Members objected or requested exclusion. (Id. ¶¶ 6-7.) The Court finds that this factor weighs in favor of approval.

On balance, the factors support final approval of the Settlement. The Settlement is fair, adequate, and reasonable.

### E. Attorneys' Fees and Costs

#### 1. Attorneys' Fees

Class Counsel request approval of $750,000 in attorneys' fees, which is equal to 25% of the Gross Settlement Amount. (Fee Mot. at 5.) Courts are obligated to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). In the MPA Order, the Court noted that Counsel's request for 25% of the gross settlement is "a potentially reasonable amount." (MPA Order at 13.)

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cty. of Nevada, 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the "presumptively reasonable" lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028-29 (9th Cir. 2000). Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations. Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

The Court begins with the lodestar method as a means of cross-checking the 25% of the gross settlement amount requested. Class Counsel calculate the following subtotals:

| Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| David Mara | 383 | $800 | $306,400 |
| Jill Vecchi | 222 | $600 | $133,200 |
| Tony Roberts | 206 | $500 | $103,000 |

| Total | 515.30 | | $542,600 |
|---|---|---|---|

(Mara Decl, Ex. 1.) Plaintiffs argue that the hourly rates between $500 and $800 are within the range of rates approved by courts for wage and hour class actions. (Fee Mot. at 9-10 (listing cases); Mara Decl. ¶¶ 36-38.) Class Counsel's request of $750,000 in fees requires a 1.38 multiplier of their lodestar. (Fee Mot. at 9.) Class Counsel argues that this multiplier is below the range of multipliers awarded in similar cases, and provide extensive support justifying this modest enhancement. (Id. at 6-9, n.9 (listing cases).)

The Court finds that the 25% benchmark fee, representing a 1.38 multiplier, is appropriate here. Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 258, 272 (9th Cir. 1989) (noting that the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent). Thus, the Court AWARDS Class Counsel $750,000, or 25% of the common fund, in attorneys' fees.

2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class Counsel seek $25,826.97 in costs, which is less than the $50,000 maximum allocation in the Agreement. (Fee Mot. at 12; Agreement ¶ 54(e)(i).) Counsel provide a breakdown of the expenses incurred in the case for filing fees, service of process, mediation, experts, and travel. (Mara Decl., Ex. 1.) These expenses are typically recoverable in litigation. Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement). The Court therefore approves the requested amount of costs.

3. Incentive Award

Plaintiffs request a service award of $7,500 for Named Plaintiffs Amanda Gonzalez and Audriana Gonzalez. The court has discretion to award incentives to class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz v. Weyerhaeuser Co., 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009). The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by

the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

In the MPA Order, the Court found these service awards to be "potentially reasonable," but advised Plaintiffs to provide greater detail about their role in the mediation and time spent participating in the litigation. (MPA Order at 12.) In support of the Fee Motion, named Plaintiffs filed declarations detailing their role assisting in the prosecution of the case, and the risks they undertook. (See Amanda Gonzalez Decl.; Audriana Gonzalez Decl.) Amanda Gonzalez estimates that she spent around 20 hours on various tasks throughout the case, including assisting with the investigation of the case and the evaluation of potential damages, looking through records and providing information to her attorneys, communicating with her attorneys during the settlement negotiations, and reviewing a copy of the settlement agreement. (Amanda Gonzalez Decl. ¶¶ 10-15, 17.) Audriana Gonzalez estimates that she spent approximately 22 hours on similar tasks. (Audriana Gonzalez Decl. ¶¶ 11-18.) In addition, named Plaintiffs agreed to a wide general release (Agreement ¶ 40), unlike other class members who only release the settled claims alleged in the complaint. Based on the above, the Court finds that the requested incentive award is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motions. The Court:

1. GRANTS final settlement approval;
2. GRANTS the request for attorneys' fees and AWARDS Class Counsel attorneys' fees in the amount of $750,000 from the gross settlement amount;
3. GRANTS the request for costs and AWARDS Class Counsel costs in the amount of $25,826.97;
4. GRANTS the request for payment to the settlement administrator and awards CPT Group, Inc. fees in the amount of $45,000 from the gross settlement amount;
5. GRANTS the request for an incentive award and AWARDS $7,500 to Amanda Gonzalez and Audriana Gonzalez;
6. DISMISSES the Complaint WITH PREJUDICE.

**IT IS SO ORDERED.**